MASTROPIETRO LAW GROUP, PLLC
John P. Mastropietro (JM 7248)
*Attorneys for Defendants*
40 Broad Street, Suite 701
New York, New York  10004
(212) 943-9079
(212) 943-9218 fax
jpm@mastrolgpllc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WAYNE RICHARDS, on behalf of himself,
Individually, and on behalf of all others similarly-
Situated,

                  Plaintiff,            Civil Action No. 21–CV–06638-VEC

        - against -

EMPIRE SCAFFOLDING SYSTEMS, INC., and
DEMARI INSTALLATIONS CORP., and
ANTONIOS MAMOUNAS, Individually,

                 Defendants.
-----------------------------------------------------------X

---

**DEFENDANTS EMPIRE SCAFFOLDING SYSTEMS, INC., DEMARI INSTALLATIONS CORP. AND ANTONIOS MAMOUNAS MEMORANDUM OF LAW IN OPPOSITION TO NAMED PLAINTIFF, WAYNE RICHARDS'S MOTION FOR CONDITIONAL CERTIFICATION AND RELATED RELIEF PURSUANT TO 29 U.S.C. § 216(B)**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ....................................................... 2

ARGUMENT ..................................................................................................................... 6

              Legal Standard .............................................................................................. 6

POINT I       Plaintiff's Allegations Fail to Demonstrate Any Common Policy or
Scheme to Violate the FLSA That Existed Within the Limitations
Period ............................................................................................................ 8

              A.      Plaintiff's Factual Allegations Concern Practices Purportedly
Occurring Prior to the Limitations Period Applicable to Potential
Opt-in Plaintiffs' Claims ............................................................... 8

              B.      Plaintiff Fails to Provide Sufficient Factual Allegations to Plausibly
Support an FLSA Violation ........................................................... 9

POINT II     Plaintiff is not Entitled to Conditional Certification of a Collective
Action ......................................................................................................... 10

POINT III    Should the Court Permit Notice to Potential Opt-In Plaintiffs, the
Look-Back Period Should Run from the Date of this Court's Order,
Not the Complaint ...................................................................................... 12

POINT IV    Should the Court Permit Notice to Potential Opt-in Plaintiffs, the
Court Should Modify Plaintiff's Proposed Notice .................................... 13

              A.      Plaintiff Fails to Adequately Define and Identify a Class of
Similarly Situated Employees ..................................................... 13

              B.      Notice Should Include Defendants' Counsel's Information ..................... 14

              C.      Potential Responsibility for Discovery Costs, Disclosure of
Counsel's Fee Arrangement & Other Issues Affecting Plaintiff's
Proposed Notice ........................................................................... 14

CONCLUSION ................................................................................................................ 16

i

# **TABLE OF AUTHORITIES**

## **Cases**

Anglada v Linens 'N Things, Inc., 06CIV.12901(CM)(LMS), 2007 WL 1552511, at *9 (SDNY Apr. 26, 2007], report and recommendation adopted (May 22, 2007) ........................................12

Benavides v Serenity Spa NY Inc., 166 F Supp 3d 474 (SDNY 2016)........................................10

Bittencourt v Ferrara Bakery & Cafe Inc., 310 FRD 106 (SDNY 2015)  ...................................14

Contrera v Langer, 278 F. Supp. 3d 702 (SDNY 2017) ...............................................................12

Davis v Abercrombie & Fitch Co., 08-CIV-1859 (PKC), 2008 WL 4702840, at *9 (SDNY Oct. 23, 2008) ........................................................................................................................................7

Hernandez v Immortal Rise, Inc., 11 CV 4360 RRM LB, 2012 WL 4369746, at *7 (EDNY Sept. 24, 2012) .....................................................................................................................................12

Hoffmann v Sbarro, Inc., 982 F Supp 249 (SDNY 1997) ..............................................................7

Jeong Woo Kim v 511 E. 5th St., LLC, 985 F Supp 2d 439, 451 (SDNY 2013).........................14

Joshi v Flagship S B Amsterdam NY, LLC, 17-CV-5785 (ALC)(SN), 2018 WL 1135566, at *4 (SDNY Mar. 1, 2018) ..................................................................................................................14

Lianhua Weng v Kung Fu Little Steamed Buns Ramen Inc., 17 CIV. 273 (LAP), 2018 WL 1737726, at *4 (SDNY Mar. 26, 2018) ......................................................................................13

Lundy v Catholic Health Sys. of Long Is. Inc., 711 F3d 106 (2d Cir 2013) ...........................9, 10

Lynch v United Services Auto. Ass'n, 491 F Supp 2d 357 (SDNY 2007) ................................8, 9

Mark v Gawker Media LLC, 13-CV-4347 AJN, 2014 WL 4058417, at *2 (SDNY Aug. 15, 2014) .........................................................................................................................................6, 8

Myers v Hertz Corp., 624 F3d 537 (2d Cir 2010) ..........................................................................6

Mason v Lbr. Liquidators, Inc., 17-CV-4780 (MKB), 2019 WL 2088609, at *6 [EDNY May 13, 2019], affd, 17-CV-4780 (MKB)(RLM), 2019 WL 3940846 (EDNY Aug. 19, 2019)..................7

Menominee Indian Tribe of Wisconsin v United States, 577 US 250 (2016) ..............................13

Pace v DiGuglielmo, 544 US 408 (2005) ..............................................................................12, 13

Qing Gu v T.C. Chikurin, Inc., CV 2013-2322 SJ MDG, 2014 WL 1515877, at *3 (EDNY Apr. 17, 2014) ....................................................................................................................10, 11

Qi Zhang v Bally Produce, Inc., 12-CV-1045 FB JMA, 2013 WL 1729274, at *4 (EDNY Apr. 22, 2013) ...........................................................................................................................11

Ritz v Mike Rory Corp., 12 CV 367 JBW RML, 2013 WL 1799974, at *3 (EDNY Apr. 30, 2013) ................................................................................................................................12

Romero v H.B. Automotive Group, Inc., 11 CIV. 386 CM, 2012 WL 1514810, at *9 (SDNY May 1, 2012) .....................................................................................................................7

Slamna v API Rest. Corp., 12 CIV. 757 RWS, 2013 WL 3340290, at *5 (SDNY July 2, 2013) .14

Trinidad v Pret A Manger (USA) Ltd., 962 F Supp 2d 545 (SDNY 2013) ............................9, 10

Vasto v Credico (USA) LLC, 15 CIV. 9298 (PAE), 2016 WL 2658172, at *16 (SDNY May 5, 2016) ..................................................................................................................................8

Whitehorn v Wolfgang's Steakhouse, Inc., 767 F Supp 2d 445 (SDNY 2011) ..........................12

**Misc.**

29 U.S.C. § 216..............................................................................................................4, 5, 6

29 U.S.C. § 255...........................................................................................................4, 6, 8, 9

## PRELIMINARY STATEMENT

Defendants, Empire Scaffolding Systems, Inc. ("Empire"), Demari Installations Corp. ("Demari") and Antonios Mamounas (hereinafter, Empire, Demari and Antonios Mamounas may collectively be referred to herein as "Defendants"), respectfully submit this Memorandum of Law in Opposition to named plaintiff, Wayne Richards's ("Plaintiff"), motion for conditional certification and related relief pursuant to 29 U.S.C. § 216(b). First, Plaintiff's contradictory and conclusory allegations fall short of the "modest factual showing" necessary to obtain conditional certification for a collective action. Plaintiff's allegations are inconsistent and lack factual specification to render the allegations plausible. Indeed, Plaintiff's declaration submitted in support of this motion contradicts allegations set forth in Plaintiff's Complaint.

Second, Plaintiff inappropriately requests that the Court authorize notice dating back three years from the date Plaintiff filed his complaint.  To the extent the Court authorizes Plaintiff to distribute notice to potential plaintiffs, the three-year window should run from the date of the Court's Order, not from the date Plaintiff filed his Complaint. The statute of limitations under the Fair Labor Standards Act ("FLSA") is three years.  For potential opt-in plaintiffs, the statute of limitations continues to run until said plaintiff files written consent to join the action.  As such, the notice period is properly restricted to three years running from the date of the Court's Order approving conditional certification of a collective action.

Finally, to the extent that the Court authorizes Plaintiff to notify potential opt-in plaintiffs, the proposed notice is overly broad.  Plaintiff's proposed notice should be tailored to target only those potential opt-in plaintiffs with legitimate and timely claims.  Accordingly, Defendants respectfully request that the Court deny Plaintiff's instant motion for certification of

a collective action, and for such other and further relief as the Court deems just, equitable and proper under the circumstances.

## <u>BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiff alleges that he worked as a laborer for Defendants from 2005 until his employment terminated in March 2019. (ECF Doc. No. 1, ¶ 20). Plaintiff alleges that his employment duties required him to work at various projects throughout the New York City metropolitan area erecting scaffolding. (<u>Id.</u>, ¶ 18). As a result, Plaintiff admits that his work schedule varied depending upon the particular project to which he was assigned to work on a given day. (ECF Doc. No. 21, ¶¶ 6, 10).

Plaintiff further admits that Defendants notified employees the particular project to which they were assigned for the following day via text message. (<u>Id.</u>, ¶ 13). Employees showed up directly to the worksite to which they were assigned. (Mihos Decl., ¶ 8).[1] This utterly refutes Plaintiff's alleged personal knowledge that other employees are "similarly situated." (<u>See generally</u>, <u>id.</u>). His personal knowledge is limited to the specific crew to which he was assigned on a given day; Plaintiff fundamentally lacks knowledge as to other employees' hours, schedule or compensation when assigned to different projects. (<u>Id.</u>, ¶¶ 4-13).

Notably, Plaintiff does not allege that he was ever required to work more than seven and one-half (7.5) hours per day. (ECF Doc. No. 21, ¶ 6). Instead, Plaintiff's overtime claims rise and fall with the allegation that he routinely worked six days per week. (<u>Id.</u>) Despite these allegations, Plaintiff's complaint and declaration are rife with contradictions. (<u>Compare</u> Doc. 1, ¶¶ 21-24 <u>with</u> ECF Doc. No. 21, ¶ 6) (highlighting that Plaintiff's allegations are substantively different regarding his typical hours worked per week). Notwithstanding Plaintiff's admission

---

[1] A true and accurate copy of the Declaration of Vasilious Mihos ("Mihos Decl."), sworn to on March 7, 2022, is annexed to the Mastropietro Declaration as Exhibit "1".

that he routinely worked six days per week, Plaintiff's declaration admits that between the months of October and February – nearly half of the year – he worked less than five days per week due to inclement weather conditions. (ECF Doc. No. 21, ¶ 6).

To the extent that Plaintiff maintains even when he worked less than five days per week, he still worked beyond 40 hours, entitling him to overtime compensation, Plaintiff's allegations cannot be reconciled. (See id.)  It is factually impossible for Plaintiff to exceed forty hours per week while working only seven and a half hours per day for less than five days in a given week. (Id.)  The only way for this to occur is if Plaintiff worked at least ten hours per day – Plaintiff has never levied such an allegation. (See generally, ECF Doc. Nos. 1, 21).

Plaintiff's admission that employees worked less than five days per week during periods of inclement weather, but only during the specific months of October to February, lacks credibility. (ECF Doc. No. 21, ¶ 6).  Defendants' inability to work during inclement weather is not so limited to these specific months; weather affects Defendants' business throughout the entire year. (Mihos Decl., ¶¶ 12-13). Defendants are in the business of installing pipe scaffolding. (Id., ¶ 13). As such, weather conditions such as rain, high winds and thunderstorms inherently prevent Defendants from working due to safety concerns. (Id.).

Plaintiff and other employees are not similarly situated.  Plaintiff was assigned to various work crews working on distinct projects across New York City. (Id., ¶¶ 4-11; ECF Doc. No. 21, ¶ 10).  Each employee's hours differed at each job. (Mihos Decl., ¶¶ 4-13).  Plaintiff cannot know the hours that other employees worked at different projects other than the one to which he was assigned on any given day. (Id., ¶ 11). As such, Plaintiff cannot identify any common policy or scheme, (id.); his knowledge is limited to the particular project and employees with whom he worked on a given day. (See ECF Doc. No. 21, ¶ 6)

3

In sum, Plaintiff's allegations are devoid of sufficient factual support and specificity to grant Plaintiff's instant motion. Even accepting Plaintiff's allegations as true, as the Court must, Plaintiff's allegations do not reveal a common policy or scheme. At best, Plaintiff's allegations reflect a possible isolated, inadvertent oversight. Considering the internal contradictions and inconsistencies, Plaintiff's allegations do not reveal some nefarious underpayment scheme. (Compare ECF Doc. No. 1 with ECF Doc. No. 21).

Nor are any of Plaintiff's allegations that employees complained to management relevant. (See ECF Doc. No. 21, ¶ 11). These purported complaints all occurred approximately four years ago and are, thus, outside the statute of limitations. (Id.; see 29 U.S.C. §§ 216 & 255). Moreover, Plaintiff admits that Defendants addressed these employee concerns when brought to management's attention. (See ECF Doc. No. 21, ¶ 11). Plaintiff admits that Defendants increased wages for all employees in response to complaints. (Id.) Nonetheless, Plaintiff contends that Defendants continued paying employees at their ordinary hourly rate. (Id.) Considering these complaints allegedly occurred outside the limitations period, they are only relevant to demonstrate Plaintiff's lack of diligence in pursuing known claims. (Id.; see 29 U.S.C. §§ 216 & 255).

Likewise, the Declaration of George Unger ("Unger Decl.") is equally irrelevant to this motion. (See generally, ECF Doc. 20-8). Mr. Unger's employment ended in 2017. (Id., ¶ 2). As such, his allegations regarding practices and policies purportedly existing in 2017 are well outside the limitations period. (Id.; see 29 U.S.C. §§ 216 & 255). Such allegations have no bearing on the instant motion. To the extent the Unger Declaration has any relevance, its only relevance is to highlight inconsistencies between the allegations contained in Plaintiff's Declaration when compared to the Unger Declaration. (Compare ECF Doc. No. 20-8 with ECF

Doc. Nos. 1 & 21).  These distinctions reveal either (i) a change in business practices such that the Unger Declaration has no probative bearing on Defendants' business practices during the limitations period applicable to this action; or (ii) inapposite factual allegations demonstrating that Plaintiff lacks commonality with other employees.  Either way, the Unger Declaration does not support certification of a collective action. (ECF Doc. No. 20-8).

Plaintiff's allegation that he is similarly situated to potential opt-in plaintiffs is further belied by the devastating global Covid-19 pandemic and attending governmental regulations, which drastically altered every aspect of Defendants' business. (See Mihos Decl., ¶¶ 18-22). Beginning in March 2020, Defendants were forced to shut down a number of active projects and cease work on them. (Mihos Decl., ¶ 19).  This reduced Defendants' labor needs. (Id.).  As a result, a number of employees were furloughed and/or voluntarily left to pursue other business opportunities. (Mihos Decl., ¶ 20). Most critically, Defendants were forced to resort to subcontracting a substantial portion of work that they used to perform with their own employees. (Mihos Decl., ¶ 21).  As a result, the business no longer bears any resemblance to the time period relevant to Plaintiff's allegations. (Mihos Decl., ¶ 22).

Plaintiff's employment ended in March 2019; he filed his complaint August 5, 2021. (ECF Doc. No. 1, ¶ 20). First, Plaintiff's claims are time-barred under the FLSA unless Plaintiff sufficiently alleges that Defendants willfully violated the statute. (29 U.S.C. § 216). Furthermore, the timeline reveals that Plaintiff lacks personal knowledge regarding Defendants' payment policies existing within the FLSA's extended three-year limitation period for willful violations. (Compare id. with ECF Doc. No. 1). Thus, Plaintiff's allegations cannot factually support any plausible allegations applicable to potential opt-in plaintiffs because the statute of limitations continues to run until each potential plaintiff consents in writing to join the action.

(29 U.S.C. § 255[a]). As such, any claim accruing prior to March 2019 will be time-barred. because Plaintiff's employment ended in March 2019 and he inherently lacks personal knowledge to factually substantiate allegations subsequent to his employment. (See id.).

Finally, Plaintiff has had the opportunity to solicit additional opt-in plaintiffs for over six-months. (Mastropietro Decl., ¶¶ 3-17).[2] Nonetheless, over more than six months, Plaintiff only successfully joined only one additional opt-in plaintiff. (Id., ¶ 11). This additional Plaintiff's allegations are identical to the named Plaintiff. There is not a single, independent fact substantiating these additional allegations. (Compare ECF Doc. No. 21 with ECF Doc. No. 22).

## ARGUMENT

### LEGAL STANDARD

The FLSA permits one or more "similarly situated" employees to assert their statutory claims in a collective action. 29 USCA § 216(b).  In the Second Circuit, determining whether to permit FLSA plaintiffs to proceed in a collective action involves a two-step inquiry. See Myers v Hertz Corp., 624 F3d 537, 555 [2d Cir 2010].

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v Hertz Corp., 624 F3d 537, 555 [2d Cir 2010]. "Second, after additional plaintiffs have opted in, 'the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" Mark v Gawker Media LLC, 13-CV-4347 AJN, 2014 WL 4058417, at *2 (SDNY Aug. 15, 2014) (quoting Myers v Hertz Corp., 624 F3d 537, 555 [2d Cir 2010])

---

[2] See Declaration of John P. Mastropietro, Esq. ("Mastropietro Decl."), sworn to on March 7, 2022, a true and accurate copy of which is submitted in Defendants' opposition papers.

As to the first step, Plaintiffs carry the burden of "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffmann v Sbarro, Inc., 982 F Supp 249, 261 [SDNY 1997]. Although the plaintiffs' burden is not onerous, they must proffer actual evidence of a factual nexus between their situation and those that they claim are similarly situated, rather than mere conclusory allegations. Mason v Lbr. Liquidators, Inc., 17-CV-4780 (MKB), 2019 WL 2088609, at *6 [EDNY May 13, 2019], affd, 17-CV-4780 (MKB)(RLM), 2019 WL 3940846 (EDNY Aug. 19, 2019); e.g., Hoffmann v Sbarro, Inc., 982 F Supp 249, 261 (SDNY 1997) (emphasizing plaintiffs burden to make a "modest factual showing cannot be satisfied simply by unsupported assertions…") (internal citations omitted). "To meet this standard, plaintiffs must proffer '"substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Romero v H.B. Automotive Group, Inc., 11 CIV. 386 CM, 2012 WL 1514810, at *9 [SDNY May 1, 2012] (quoting Davis v Abercrombie & Fitch Co., 08-CIV-1859 (PKC), 2008 WL 4702840, at *9 [SDNY Oct. 23, 2008]).

Here, Plaintiff fails to allege a sufficient factual nexus between himself and the purported class he seeks to represent.  Plaintiff fails to make even the modest showing required to establish that he is similarly situated to any potential opt-in plaintiffs.  As such, Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

**POINT I**

**PLAINTIFF'S ALLEGATIONS FAIL TO DEMONSTRATE ANY COMMON POLICY OR SCHEME TO
VIOLATE THE FLSA THAT EXISTED WITHIN THE LIMITATIONS PERIOD**

### A.   *Plaintiff's Factual Allegations Concern Practices Purportedly Occurring Prior to the Limitations Period Applicable to Potential Opt-in Plaintiffs' Claims*

The limitations period for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 USCA § 255(a). the statute of limitations continues to run on each potential opt-in plaintiff's until affirmatively consents, in writing, to join the action. Lynch v United Services Auto. Ass'n, 491 F Supp 2d 357, 367 [SDNY 2007]. As of the date of these papers, March 7, 2022, the statute of limitations for potential opt-in plaintiffs is either March 7, 2020, or March 7, 2019, if Plaintiff plausibly alleges a willful violation. More accurately, however, the limitations period will measure back from the date the Court determines the instant motion. See Vasto v Credico (USA) LLC, 15 CIV. 9298 (PAE), 2016 WL 2658172, at *16 (SDNY May 5, 2016) (declining plaintiffs' request to toll limitations during pendency of motion); Mark v Gawker Media LLC, 13-CV-4347 AJN, 2014 WL 4058417, at *2 (SDNY Aug. 15, 2014) (same).

Plaintiff filed his complaint on August 5, 2021, alleging, *inter alia*, that Defendants failed to pay Plaintiff overtime at a rate of one and a half times his ordinary hourly rate for hours worked beyond forty hours in a given week. Because Plaintiff's employment ended in March 2019, the only way Plaintiff's claims are not time-barred is if the Court finds that Plaintiff sufficiently alleges a willful violation of the FLSA. (See 29 U.S.C. 255[a]) (providing for a two-year statute of limitations unless plaintiff alleges a willful violation, which extends the period to three years). Even applying the extended limitations period, Plaintiff relies exclusively on practices allegedly existing during his employment. Plaintiff's employment, however, ceased

8

prior to March 7, 2019. It follows, Plaintiff's allegations inherently address conduct that occurred prior to March 7, 2019. Thus, all conduct alleged to support the instant motion occurred outside the limitations period that would be applicable to any potential opt-in plaintiffs.

Plaintiff's allegations cannot factually support any plausible allegations applicable to potential opt-in plaintiffs because the statute of limitations continues to run until each potential plaintiff consents in writing to join the action. E.g., Lynch v United Services Auto. Ass'n, 491 F Supp 2d 357, 367 (SDNY 2007). The last day of Plaintiff's employment is outside the limitations period. The allegations, therefore, cannot plausibly support any actionable policy or practice that existed within the statute of limitations for potential opt-in plaintiffs. This is true irrespective of whether the Court accepts Plaintiff's allegations of willfulness to avail himself of the three-year statute of limitations. (See 29 U.S.C. 255[a]).

Plaintiff lacks personal knowledge regarding Defendants' payment policies existing within even the FLSA's extended three-year limitation period for willful violations. As such, any claim accruing prior to March 2019 will be time-barred, and the Court should deny Plaintiff's motion in its entirety.

**B.** *Plaintiff Fails to Provide Sufficient Factual Allegations to Plausibly Support an FLSA Violation*

"As the Second Circuit recently explained, 'to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" Trinidad v Pret A Manger (USA) Ltd., 962 F Supp 2d 545, 555 [SDNY 2013] (quoting Lundy v Catholic Health Sys. of Long Is. Inc., 711 F3d 106, 114 [2d Cir 2013]). "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Lundy v Catholic Health Sys. of Long Is. Inc., 711 F3d 106, 114 [2d Cir 2013] (internal

9

citations omitted).  Courts will deny certification where a plaintiff has failed to plausibly allege a policy or practice whereby defendants required employees work more than 40 hours without overtime compensation. Cf. Id.

Here, Plaintiffs "supply nothing but low-octane fuel for speculation, not the plausible claim that is required." Trinidad v Pret A Manger (USA) Ltd., 962 F Supp 2d 545, 556 (SDNY 2013) (quoting Lundy v Catholic Health Sys. of Long Is. Inc., 711 F3d 106, 114 [2d Cir 2013]). Plaintiff admits that his allegations are inconsistent between the Complaint and his Declaration submitted in support of the instant motion. Critically, Plaintiff recently recalled that he often worked less than five days per week between October and February. Not only does this admission call into question the veracity of Plaintiff's allegations as a whole, but it is also tantamount to an admission that Plaintiff is not similarly situated to other potential opt-in plaintiffs. Instead, each individual's work schedule on any given week would require independent analysis.  Thus, Plaintiff's allegations lack sufficient commonality to designate him similarly situated to other employees he seeks to join.

**POINT II**

**PLAINTIFF IS NOT ENTITLED TO CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**

A plaintiff seeking conditional certification "must provide factual detail or evidence beyond simply alleging that they observed or spoke with other similarly situated employees." Benavides v Serenity Spa NY Inc., 166 F Supp 3d 474, 481 [SDNY 2016]; Qing Gu v T.C. Chikurin, Inc., CV 2013-2322 SJ MDG, 2014 WL 1515877, at *3 (EDNY Apr. 17, 2014) (denying conditional certification where "plaintiffs who worked at more than one location did not specify to which location their observations pertained[,] … [nor] provided a factual basis for the court to consider whether the employees plaintiffs refer to are similarly situated to them.");

10

accord, Qi Zhang v Bally Produce, Inc., 12-CV-1045 FB JMA, 2013 WL 1729274, at *4 (EDNY Apr. 22, 2013) (refusing to certify where, "even assuming that the quantity of plaintiff's evidence is sufficient, [the Court's] issue is with the quality of plaintiff's evidence, which fails to address the duties and responsibilities of other [similarly situated employees].").

Here, Plaintiff relies almost exclusively on his purported observations and conversations with similarly situated employees.  Plaintiff ignores that Defendants' business is requires an irregular schedule. See e.g., Qing Gu, 2014 WL 1515877, at *3.  Put simply, Plaintiff cannot know typical hours and payment policies for workers assigned to different work crews at different projects.  Nor does plaintiff allege that the potential opt-in plaintiffs identified in his declaration are the same that he alleges he personally observed: (i) performing similar tasks or assignments; (ii) assigned to the same project; (iii) working a similar schedule or similar hours; or (iv) failing to receive overtime compensation for hours worked beyond forty hours per week. See Id.; Qi Zhang, 2013 WL 1729274, at *4.  Couple these failures with the fact that Plaintiff's allegations address conduct occurring outside the limitations period and certification of a collective action is inappropriate in this case.

Plaintiff alleges in conclusory fashion that he typically worked between 45-52 hours per week.  Yet, the remainder of his allegations describe an irregular work schedule, which depended on a number of independent variables.  Particularly relevant are variables such as weather and the particular project to which Plaintiff was assigned.  Plaintiff admits that he worked different hours at different projects. Plaintiff further admits that the weather highly influenced his schedule.  In sum, not only do Plaintiff's own allegations refute his assertion that he "typically" worked over 40 hours per week, but his contradictory allegations also reveal no regularity to his

schedule whatsoever.  This belies the argument that he is similarly situated to other potential opt-in plaintiffs.

## POINT III

### SHOULD THE COURT PERMIT NOTICE TO POTENTIAL OPT-IN PLAINTIFFS, THE LOOK-BACK PERIOD SHOULD RUN FROM THE DATE OF THIS COURT'S ORDER, NOT THE COMPLAINT

Plaintiff tacitly seeks to toll the limitations period by requesting that the Court authorize sending the proposed notice to any similarly situated employee who worked for Defendants within three years of the date Plaintiff filed his complaint.  This request is improper.  The notice should run from three years prior to the date of this Court's order on the instant motion.

It is well-settled that, generally, "under the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed." Ritz v Mike Rory Corp., 12 CV 367 JBW RML, 2013 WL 1799974, at *3 (EDNY Apr. 30, 2013); see e.g., Hernandez v Immortal Rise, Inc., 11 CV 4360 RRM LB, 2012 WL 4369746, at *7 [EDNY Sept. 24, 2012] (highlighting that "any notice period generally shall be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint."); Whitehorn v Wolfgang's Steakhouse, Inc., 767 F Supp 2d 445, 451 (SDNY 2011) (providing "courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice."); Anglada v Linens 'N Things, Inc., 06CIV.12901(CM)(LMS), 2007 WL 1552511, at *9 [SDNY Apr. 26, 2007], report and recommendation adopted (May 22, 2007).

Thus, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Contrera v Langer, 278 F. Supp. 3d 702, 723 (SDNY 2017) (quoting Pace v

DiGuglielmo, 544 US 408, 418 [2005]).  The second prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Contrera, 278 F. Supp. 3d at 723 (quoting Menominee Indian Tribe of Wisconsin v United States, 577 US 250, 256 [2016]).

Here, Plaintiff has not established a right to toll the limitations period.  Plaintiff is solely responsible for the delay between the date he filed his Complaint and when he made the instant motion.  Voluntarily delaying mediation and filing of the instant motion are neither extraordinary circumstances nor circumstances beyond Plaintiff's control.  In fact, they are just the opposite; these circumstances are exclusively in Plaintiff's control.  Because Plaintiff's motion fails to establish either prong necessary to establish entitlement to an equitable toll, the Court should deny this request and measure the three-year window from the date the Court issues its Order.

**POINT IV**

**SHOULD THE COURT PERMIT NOTICE TO POTENTIAL OPT-IN PLAINTIFFS, THE COURT SHOULD MODIFY PLAINTIFF'S PROPOSED NOTICE**

### A.  *Plaintiff Fails to Adequately Define and Identify a Class of Similarly Situated Employees*

Plaintiff's proposed notice fails to adequately identify a class of similarly situated employees.  Plaintiff seeks to distribute notice to a class of former and current "non-managerial employees who worked for Defendants as a laborer, mechanic, or in another similar position…". (ECF Doc. No. 20-4).  This is an impermissibly broad definition.

"For Plaintiffs to meet their burden, they are 'obligated to provide some probative information regarding similarly situated employees such as their names, their duties and their hours worked.'" Lianhua Weng v Kung Fu Little Steamed Buns Ramen Inc., 17 CIV. 273 (LAP), 2018 WL 1737726, at *4 [SDNY Mar. 26, 2018] (declining to certify non-similarly situated employees where "[d]espite speaking with 'various other employees,' [p]laintiffs' factual

13

allegations are void of the detail required to show that employees in other positions are similarly situated.") (internal citations omitted).

Here, to the extent the Court finds that Plaintiff has established plausible claims on behalf of potential opt-in plaintiffs, the notice should be limited to employees working under the same labor classification as plaintiffs – *i.e.*, laborers.  Plaintiff provides no facts to justify that he is similarly situated to employees working under different classifications, such as their hourly wage, typical schedule, or description of work they typically performed. See Joshi v Flagship S B Amsterdam NY, LLC, 17-CV-5785 (ALC)(SN), 2018 WL 1135566, at *4 [SDNY Mar. 1, 2018] (denying certification where plaintiff alleges in "generalized terms that he observed other employees at work and had several conversations with other employees about their compensation."); e.g., Jeong Woo Kim v 511 E. 5th St., LLC, 985 F Supp 2d 439, 451 (SDNY 2013). In sum, Plaintiff supplies zero facts to justify widespread dissemination of the notice to a catch-all category of employees working "in another similar position."

### B. Notice Should Include Defendants' Counsel's Information

Plaintiff's proposed notice does not include contact information for Defendants' counsel. This should be corrected. Bittencourt v Ferrara Bakery & Cafe Inc., 310 FRD 106, 118 [SDNY 2015] (quoting Slamna v API Rest. Corp., 12 CIV. 757 RWS, 2013 WL 3340290, at *5 [SDNY July 2, 2013]) (providing "[c]ourts in this Circuit have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action.").

### C. Potential Responsibility for Discovery Costs, Disclosure of Counsel's Fee Arrangement & Other Issues Affecting Plaintiff's Proposed Notice

First, Question five on Plaintiff's proposed notice should include notice that potential opt-in plaintiffs may be responsible for certain costs and fees, such as discovery costs.  Second, Question 7 on the proposed notice should be modified to include the Plaintiff's counsel's fee

arrangement.  While Plaintiff discloses that his counsel is litigating the case on a contingency basis, the notice does not adequately inform potential opt-in plaintiffs of the percentage of the recovery to which Plaintiffs' counsel will be entitled to collect.  Putative class members should be adequately informed of the arrangement prior to joining the action to the extent that it may affect their recovery.

Furthermore, Question 8 should be deleted in its entirety.  There is no basis for including such a disclaimer, nor any allegation or indication that Defendants have engaged in any retaliatory conduct whatsoever.  As such, the disclaimer is improper.  Likewise, there is no need for a reminder notice in this case.  Initially, Plaintiff indicated that there were over fifty (50) potential opt-in plaintiffs.  Plaintiff even delayed mediation and the instant motion to enable them more time to attempt to join additional plaintiffs.  Accordingly, Plaintiff has already had an opportunity to solicit additional plaintiffs for more than six months. In that time, only one additional plaintiff opted-in the action. Given the time already afforded to Plaintiff to join additional plaintiffs, sending a reminder notice is likely to be construed endorsing the validity of potential plaintiff's claims and/or the Court encouraging potential plaintiffs to join the action.

Finally, the last sentence of Question 6 should be deleted.  Plaintiff has not established that any potential opt-in plaintiff has a viable claim to assert in this action.  As such, including a notice that the limitations period continues to run on "your claim" implies that potential plaintiffs have ripe claims and induce them to assert potentially meritless claims.  Such a notice is highly speculative and improper considering no such claims may exist.

## CONCLUSION

**WHEREFORE,** in light of the foregoing, Defendants respectfully request that the Court deny Plaintiff's motion for conditional certification in its entirety. Alternatively, should the Court grant conditional certification, Defendants respectfully request that the Court: (i) limit the potential class to those similarly situated employees classified as a laborer; (ii) deny Plaintiff's tacit request to toll the statute of limitations and limit notice to potential plaintiffs who worked for Defendants within three years of the date of the Court's Order on this motion; (ii) modify the notice and consent forms as set forth above; and (iv) for such other and further relief as the Court deems just, proper and equitable under the circumstances.

Dated: New York, New York
      March 7, 2022

                          **MASTROPIETRO LAW GROUP, PLLC**
                          *Attorneys for Defendants*



By: _____
          John P. Mastropietro (JM 7248)
      40 Broad Street, Suite 701
      New York, New York  10004
      (212) 943-9079
      (212) 943-9218 fax
      jpm@mastrolgpllc.com